**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DEMETRIUS BROWN,                     :
                                    :     Civil Action No. 11-4421 (RBK)
          Plaintiff,                :
                                    :
          v.                        :     **OPINION**
                                    :
UNITED STATES, et al.,              :
                                    :
          Defendants.               :

**APPEARANCES:**

Plaintiff <u>pro se</u>
Demetrius Brown
F.C.I. Fort Dix
Fort Dix, NJ  08640

**KUGLER,** District Judge

　　Plaintiff Demetrius Brown, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, seeks to bring this action pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), alleging violations of his constitutional rights.

　　At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and attachments and are accepted as true for purposes of this review.

Apparently during late 2009 and early 2010, a substantial amount of contraband, including cell phones and tobacco, was circulating throughout the Federal Correctional Institution at Fort Dix, New Jersey, prompting prison officials to impose unit-wide restrictions upon the discovery of such contraband. Plaintiff alleges that on January 26, 2010, a series of disturbances occurred in the East Side, consisting of several housing units.  Specifically, at the beginning of the 4:00 p.m. stand-up count, Unit 5703 inmates activated multiple pull-station fire alarms in the housing unit, disrupting normal operations and the taking of the count.  Thereafter, a Disturbance Control Team ("DCT") was called to assist in clearing Unit 5703 and to conduct a mass shakedown of the housing unit.  Other staff conducted interviews of the inmates.  At the conclusion of the shakedown and interviews, the inmates were returned to their housing unit. Two inmates were placed in the Special Housing Unit ("SHU") for disorderly behavior.

On January 27, 2010, based on information gathered in the initial interviews, prison staff conducted follow-up interviews of the inmates.  At the conclusion of these follow-up interviews,

2

eight inmates were scheduled to be placed immediately into the Special Housing Unit ("SHU").

As the follow-up interviews were being conducted on January 27, 2010, all but 15 of the 334 inmates at the Satellite Camp refused to attend the noon meal.  At the conclusion of interviews at the Satellite Camp, which included the issue of inmates circulating contraband, 42 inmates were scheduled for placement at the SHU and were transported there by bus.

On January 28, 2010, to relieve overcrowding at the SHU, 40 inmates were bussed to the Federal Medical Center at Devens, Massachusetts, pending transfer to another facility.

Later that day, fire-alarm pull stations were activated once in Unit 5703 and twice in Unit 5711.  Also, in Unit 5703, the fire suppression sprinkler head located outside the unit team office corridor was broken, causing flooding in this area.  The DCT again escorted inmates from the unit for interviews and conducted a shakedown search of Unit 5711.  DCT staff transported an additional 34 inmates from Units 5703 and 5711 to SHU.

As interviews were being conducted of Unit 5711 inmates, a fire-alarm pull station in Unit 5702 was activated.  Staff interviewed Unit 5702 inmates, and one inmate from Unit 5702 was placed in SHU for attempting to disrupt the interviews.

On January 29, 2010, to relieve overcrowding in SHU, 39 inmates were transported to the Metropolitan Detention Center in

3

Brooklyn, New York.  Later, an additional 34 inmates from Unit

5711 and two inmates from Unit 5702 were placed in SHU.[1]

---

[1] According to the affidavit attached to the Complaint, Plaintiff was placed in the SHU on January 29, 2010, after he told interviewers that he did not have any information about people who pulled the fire-alarms and that, if he did have information, he would not provide it.

Plaintiff alleges in the affidavit that he was triple-bunked in SHU and that the cell was dirty and had poor ventilation. Plaintiff alleges in the affidavit that he was required to sleep on the floor while in SHU.  Plaintiff did not report to his work assignment while confined in SHU.

Also according to the affidavit, Plaintiff was transferred three days later, on February 3, 2010, to the Metropolitan Detention Center in Brooklyn, New York.  Plaintiff alleges that the administrative detention cell at the MDC in Brooklyn had no access to the outdoors, and lacked exercise equipment, religious services, and education facilities that exist in a normal institutional setting.  Plaintiff alleges that, while at the MDC, he received nutrition in an amount designed for sedentary persons, which left him hungry, and that he had difficulty sleeping because lights remained on in the cell at night. Plaintiff alleges that he was required to purchase hygiene products and personal property at a cost of $567.90.  Plaintiff alleges that he did not receive dental care for a cavity while at MDC.  Plaintiff alleges that he did not have clean sheets while at MDC.  Finally, Plaintiff alleges that he did not have a work assignment during his entire administrative detention, which resulted in a loss of wages in the amount of $75.  There is no factual allegation suggesting that any of the named defendants, all of whom are employed at FCI Fort Dix in New Jersey, had any responsibility for conditions at the MDC in Brooklyn.

Plaintiff alleges that he was returned to FCI Fort Dix on May 12, 2010, at which time he was placed in the general population.

In addition, Plaintiff alleges that this transfer violated Fed.R.App.P. 23(a), which addresses the transfer of inmates who have a habeas appeal pending, as Petitioner did at that time. See Brown v. Grondolsky, No. 10-1336 (3d Cir.).  Plaintiff alleges that he did not have access to his legal materials while at MDC.  This Court takes judicial notice of the appellate

On February 3, 2010, to relieve overcrowding in SHU, 40 inmates were transported to FMC at Devens, Massachusetts. Following their departure, 40 inmates from Unit 5702 were placed in the SHU.

Plaintiff alleges that from January 26 through 29, 2010, over 700 inmates were interviewed in connection with the repeated activation of fire-alarms and with the introduction of contraband into the housing units.  Plaintiff alleges that inmates identified as being involved in either contraband trafficking or disruptive activity were placed in the SHU.  Plaintiff alleges that inmates who "boisterously" resisted the interviews or shakedowns were also placed in SHU.[2]  Nevertheless, Plaintiff alleges that, due to a lack of evidence, individual incident reports were not issued.  Plaintiff alleges that no hearings related to the SHU placements were conducted and that no Administrative Detention Orders were issued.

Plaintiff alleges that he returned to F.C.I. Fort Dix on May

---

docket, which reflects that Plaintiff filed a 31-page brief in support of his appeal on April 14, 2010, supported by a 43-page appendix filed the same day.  On June 2, 2010, Plaintiff filed a reply brief in support of his appeal.  Nothing in the appellate docket reflects any lack of access to Plaintiff's legal materials during the period of the briefing schedule.

Some of the dates in the affidavit do not comport with the dates in the Complaint, but the differences are not material to this Court's decision.

[2] The total number of inmates placed in SHU is 121; they are not broken down by reason for their placement in SHU.

12, 2010, after 97 days at the Metropolitan Detention Center. Plaintiff alleges that he was then told that he had a Public Safety Factor ("PSF") which prevented him from being placed in a camp placement.  Plaintiff alleges that he requested that his case manager F. Oleson submit him for consideration to the Designation Sentence Computation Center for a PSF waiver; but Oleson refused to do so.

Plaintiff alleges that he has exhausted his administrative remedies.  Plaintiff alleges that from the date of his return to F.C.I. Fort Dix, on May 12, 2010, until July 15, 2010, he attempted to informally resolve issues related to his Administrative Detention with Case Manager Oleson.  Plaintiff alleges that Counselor Reyes lost Plaintiff's first BP-8 Informal Resolution Form[3] and issued another to Plaintiff on July 15, 2010.  Plaintiff alleges that he submitted the complete BP-8 to Counselor Reyes on July 20, 2010.  The complaint raised in the BP-8 read as follows:

> I am complaining that Captain Janel Fitzgerald and other unknown Bureau of Prison (BOP) officials have violated my rights to Due Process and Equal Protection by failing to provide me with an Administrative Detention Order for my detention occurring between the dates 1/27/10 and 5/12/10 and for failing to allow me access and retention of authorized property while in

---

[3] Plaintiff does not allege the date he submitted his first BP-8 Informal Resolution Form.  In one of his administrative appeals, however, he states that he submitted the first BP-8 Informal Resolution Form approximately four weeks before he requested the second, which would be on or about June 17, 2010.

> detention. - As a result, I am requesting that I be
> reimbursed the amount of $567.90 for monies loaned to
> repurchase property while in detention and that I be
> paid the amount of $75.00 for loss-time wages for work
> missed due to the Administrative Detention.  Also, I am
> requesting that I be placed back/returned to the job
> assignment in "labor Pool" and that I be returned to a
> bottom bed bunk assignment.  Moreover, I am requesting
> that I be restored to whole as a result of the
> Administrative Detention and in light of the fact that
> I have not received an incident report following such.

(Complaint, Ex. A.)  Plaintiff received an undated response that

indicated that he could receive a copy of the administrative

segregation order for the pending investigation for the period of

January 27, 2010, to May 12, 2010, that he could file a tort

claim for his missing property, that he was not entitled to lost

wages, and that there was not an available labor pool position

for him.  On September 1, 2010, Plaintiff appealed.  On September

3, 2010, the appeal was rejected on the grounds that the initial

BP-8 was untimely.

    Plaintiff names as defendants the United States of America,

Warden Donna Zickefoose, Associate Warden Jacqueline B. Nichols,

Captain Janel Fitzgerald, Special Investigative Agent D. Adams,

Unit Manager Mr. McKinnon, Case Manager Mr. Emmert, Counselor

Tracy Sims, Case Manager Mr. Oleson, and "Unknown Other Bureau of

Prison Officials."  Plaintiff asserts the following claims:

(Count 1) Plaintiff alleges that Defendants Donna Zickefoose,

Jacqueline B. Nichols, Janel Fitzgerald, D. Adams, Mr. McKinnon,

Mr. Emmert, Tracy Sims, and other unknown Bureau of Prisons

Officials conspired to discriminate and deprive Plaintiff of equal protection by "Administratively Detaining him without Order for punitive reasons that he individually and as a member of a class of inmates reserved his right not to 'inform'/cooperate with authorities" on the probability that such cooperation would have violated his Fifth Amendment privileges against self-incrimination, all in violation of 42 U.S.C. §§ 1985, 1986, the Equal Protection Clause of the Fifth and Fourteenth Amendments, 28 C.F.R. § 541.12(1) and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 389 (1971); (Count 2) Plaintiff alleges that Defendants Donna Zickefoose, Jacqueline B. Nichols, Janel Fitzgerald, D. Adams, Mr. McKinnon, Mr. Emmert, Tracy Sims, and unknown BOP officials individually deprived Plaintiff of equal protection by "Administratively Detaining him without Order for punitive reasons that he individually and as a member of a class of inmates reserved his right not to 'inform'/cooperate with authorities" on the probability that such cooperation would have violated his Fifth Amendment privileges against self-incrimination, all in violation of 42 U.S.C. §§ 1985, 1986, the Equal Protection Clause of the Fifth and Fourteenth Amendments, 28 C.F.R. § 541.12(1) and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 389 (1971); (Count 3) Plaintiff alleges that from January 29, 2010, to May 12, 2010, Defendants Donna Zickefoose,

Jacqueline B. Nichols, Janel Fitzgerald, D.Adams, Mr. McKinnon, Mr. Emmert, Tracy Sims, and other unknown BOP officials violated Plaintiff's due process rights by causing "deprivation of property, punishment, and atypical hardship" leading up to and during his administrative detention, all in violation of 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments to the United States Constitution, 28 C.F.R. § 541.12(1)(3)(4)(6)(10), 28 C.F.R. § 541.22, and <u>Bivens</u>; (Count 4) Plaintiff alleges that from January 29, 2010, to May 12, 2010, Defendants Donna Zickefoose, Jacqueline B. Niochols, Janel Fitzgerald, D. Adams, Mr. McKinnon, Mr. Emmert, Tracy Sims, and unknown BOP officials subjected him to cruel and unusual punishment leading up to and during his Administrative Detention, all allegedly in violation of 42 U.S.C. § 1983, the Eighth and Fourteenth Amendments to the U.S. Constitution, 28 C.F.R. § 541.12(a)(4), and <u>Bivens</u>; (Count 5) Plaintiff alleges that the Defendant United States falsely imprisoned him in Administrative Detention for 105 days without authority, order, or a subsequent hearing, all allegedly in violation of 28 C.F.R. § 541.22, et seq., and the Federal Tort Claims Act; (Count 6) Plaintiff alleges that from January 29, 2010, to May 12, 2010, Defendants Donna Zickefoose, Jacqueline B. Nichols, Janel Fitzgerald, D. Adams, Mr. McKinnon, Mr. Emmert, Tracy Sims, and other unknown BOP officials unreasonably searched and seized him and his papers, by confining him in Administrative

Detention, all allegedly in violation of 28 C.F.R. §§ 541.12, 541.22, the Fourth Amendment to the United States Constitution, and <u>Bivens</u>; (Count 7) Plaintiff alleges that from July 26, 2010 to February 23, 2011, Defendants F. Oleson, Donna Zickefoose, and other unknown BOP officials violated Plaintiff's right to procedural due process by failing to submit his request for a public safety factor waiver, all allegedly in violation of Program Statement 5100.08, 28 C.F.R. § 541.12(s), the Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution, and <u>Bivens</u>. Plaintiff seeks certification of a class of "non-informant inmates" with respect to the claims in Counts 1, 2, 5, and 6. Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages.

## II. <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United</u>

<u>States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has held that the

_Twombly_ pleading standard applies to civil rights actions.   _See_

_Phillips v. County of Allegheny_, 515 F.3d 224, 234 (3d Cir.

2008).

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking _Twombly_ and the
> Court's contemporaneous opinion in _Erickson v. Pardus_,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of _Twombly_, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

_Phillips_, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of _any_ civil complaint, a court must

distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements."  _Ashcroft v. Iqbal_, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation."  _Id._ at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

> Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
> > (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect

> to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>      (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added).  See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

14

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action.  Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party.  The court may also sever any claims against a party."[4]

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.  Bivens v. Six Unknown Agents

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due

---

[4] Here, the outcome of the screening analysis of the separate claims makes it unnecessary for this Court to determine whether the claims and parties are properly joined.

Process Clause, see Davis v. Passman, 442 U.S. 228 (1979). But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412 (1988).

Relying upon Bivens, several lower federal courts have implied a damages cause of action against federal officers, under the Due Process Clause of the Fifth Amendment, for claims by federal pre-trial detainees alleging inadequate medical care or unconstitutional conditions of confinement. See, e.g., Lyons v. U.S. Marshals, 840 F.2d 202 (3d Cir. 1988); Magluta v. Samples, 375 F.3d 1269 (11th Cir. 2004); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928 (1980).

Supervisors in Bivens actions may not be held liable on a theory of respondeat superior. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Bistrian v. Levi, 212 WL 4335958, *8 (3d Cir. Sept. 24, 2012).

IV.   ANALYSIS

A.   Exhaustion of Administrative Remedies

No action may be brought by a prisoner with respect to prison conditions unless the prisoner has exhausted available administrative remedies. 42 U.S.C. § 1997e(a). Specifically, 42 U.S.C. § 1997e(a) provides:

16

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any
> other Federal law, by a prisoner confined in any jail,
> prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

"[T]he ... exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002) (citation omitted).

In addition, a prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process. Booth v. Churner, 532 U.S. 731 (2001).

Inmates are not required to specifically plead or demonstrate exhaustion in their complaints; instead, failure to exhaust is an affirmative defense that must be pled by the defendant. Jones v. Bock, 549 U.S. 199 (2007). Nevertheless, a district court has inherent power to dismiss a complaint which facially violates this bar to suit. See, e.g., Bock, 549 U.S. at 214-15 (referring to the affirmative defense of a statute of limitations bar); Lindsay v. Williamson, 271 Fed.Appx. 158, 159-160, 2008 WL 902984, *1 (3d Cir. 2008); Ray v. Kertes, 285 F.3d 287, 293 n.5 (3d Cir. 2002); Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000).

The Third Circuit observed in Nyhuis, however, that an

17

inmate may satisfy § 1997e(a) through substantial compliance. "Without embellishing - for the case law in the area will have to develop - we note our understanding that compliance with the administrative remedy scheme will be satisfactory if it is substantial." Nyhuis, 204 F.3d at 77-8. See also Veteto v. Miller, 794 F.2d 98, 99-100 (3d Cir. 1986) (vacating sua sponte dismissal based upon failure to exhaust BOP's Administrative Remedy Program where prisoner alleged that he had "repeatedly requested administrative remedies" from the defendants with no response or success, and remanding to enable plaintiff "to amend his complaint so as to supply more specific facts on this subject and to enable the court to hold a preliminary hearing, if needed").

The Bureau of Prisons Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."[5]  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  the Federal Correctional Institution at Fort Dix employs a BP-8

---

[5] "This rule does not require the inmate to file under the Administrative Remedy Program before filing under statutorily-mandated procedures for tort claims (see 28 CFR 543, subpart C), Inmate Accident Compensation claims(28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D),[ or other statutorily-mandated administrative procedures]." 67 F.R. 50804-01, 2002 WL 1789480 (August 6, 2002).

Informal Resolution Form for this purpose.  That form requires the inmate to state what efforts he has made to resolve his complaint informally and to state the names of staff contacted. If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" <u>within 20 days of the date on which the basis for the Request occurred</u>, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.[6]  <u>Id.</u>  Appeal to the General Counsel is the final administrative appeal.  <u>Id.</u>  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

Here, Plaintiff alleges that he tried to comply with the FCI Fort Dix policy, requiring informal resolution attempts before requesting a BP-8 form, by speaking with his Case Manager Oleson during the second week after his return to FCI Fort Dix on May

---

[6] Response times for each level of review are set forth in 28 C.F.R. § 542.18.

12, 2010, in response to which Mr. Oleson stated he would try to locate the administrative segregation order and directing Plaintiff to return in a week.  Plaintiff alleges that he returned to Case Manager Oleson in a week, when he was advised that the Case Manager still had no information and that he should return in another week.  When there was still no information, Plaintiff alleges that he requested a BP-8 form from Counselor Reyes.  Plaintiff does not allege the date he first requested a BP-8 form, or the date he first submitted a BP-8 form.[7]  Plaintiff alleges that he requested a (second) BP-8 informal-resolution administrative remedy form on July 15, 2010, after the one that he submitted about four weeks earlier, or about June 17, 2010, was lost.  He alleges that he submitted a second BP-8 form on July 20, 2010.  In the July 20, 2010, BP-8 form, Plaintiff requested a copy of the administrative Detention Order for his detention between January 27, and May 12, 2010, and he requested a remedy for lack of access to property, loss of property, and loss of wages, also occurring during the same time frame. (Complaint, Affidavit, Ex. A.)  The initial response is undated. The initial response stated that Plaintiff was entitled to a copy of the administrative segregation order (but none was attached), that he could file a tort claim for any missing property, that he

---

[7] Plaintiff has not attached a copy of this first BP-8 form to the Complaint or accompanying Affidavit.

was not entitled to lost wages, and that there was not presently any position open in the Labor Pool.

Plaintiff submitted a Form BP-9 Administrative Remedy on August 31, 2010.  The BP-9 was rejected as untimely, with a notation that the BP-9 Administrative Remedy request must be received within 20 days of the event complained about.  Plaintiff returned his BP-9 to the FCI Fort Dix Remedy Coordinator, disputing the timeliness of the BP-9, and on September 16, 2010, the FCI Fort Dix Remedy Coordinator again rejecting the BP-9, remarking that the incident complained of happened on January 27, 2010, through May 12, 2010, and that Plaintiff had 20 days from then (or until June 1, 2010) to file his BP-9 Administrative Remedy request.

On September 27, 2010, Plaintiff then filed an appeal to the Regional office, asserting that he engaged in the required "informal" resolution process, prior to the submission of a BP-8 form, from May 12, 2010 to July 15, 2010, that he submitted a first BP-8 (on an unspecified date) and that when he did not receive a response, he learned that the first form was lost and he procured a second BP-8 form on July 15, 2010, which he filled out and returned to the appropriate official on July 20, 2010.[8]

_____

[8] Plaintiff does not attach to his Affidavit or the Complaint a copy of the first, allegedly lost, BP-8 form, which would establish the date it was submitted.  Neither does Plaintiff allege the date when the first form was submitted. Nevertheless, subtracting four weeks from July 15, 2010, it would

On October 1, 2010, the Administrative Remedy Coordinator at the Northeast Regional Office rejected the appeal because the BP-9 Administrative Remedy form was not timely.

On October 20, 2010, Plaintiff filed an appeal to the Central Office, which was rejected on November 18, 2010, on the grounds that the BP-9 Administrative Remedy was untimely.

Here, Petitioner asserts that his BP-9 Administrative Remedy should be considered timely, essentially because he was prevented from timely filing by the pre-BP-8 and BP-8 informal resolution processes, with which he complied.  However, nothing in the requirement that he try to informally resolve the dispute before filing a BP-8 or a BP-9 prevented him from filing a timely BP-9. Despite the 20-day BP-9 filing deadline, Plaintiff - by his own admission - did not begin the informal resolution process until the week after he returned to FCI Fort Dix.  Nothing in the facts alleged establishes that he was prevented from requesting a BP-8 form as soon as Mr. Oleson was unable to provide him the requested administrative segregation order at their first meeting; Plaintiff simply chose to wait.  Indeed, Plaintiff does not allege that he ever timely requested or was refused a BP-8 form, or that he ever requested or was refused a BP-9 form prior

---

appear that the first BP-8 was submitted on or about June 17, more than two weeks after the June 1, 2010, deadline for the BP-9.  The BP-9 was submitted on August 31, 2010, almost three months after its June 1, 2010, deadline.

to the 20-day filing deadline.  Plaintiff failed to timely
<u>attempt</u> to file the BP-9.  He did not attempt to substantially
comply with the 20-day deadline; thus, he failed timely to
exhaust his administrative remedies.  Accordingly, the claims
arising out of his placement into SHU, his alleged lack of access
to (or loss of) personal property, and his alleged loss of prison
wages are dismissible with prejudice for failure to exhaust
administrative remedies.  In any event, as described more fully
below, the allegations of the Complaint fail to state a claim.

B.   <u>Conspiracy Claims</u>

Plaintiff alleges that the individual defendants, except for
Case Manager Oleson, "conspired" to deprive him of equal
protection, in violation of 42 U.S.C. §§ 1985 and 1986 and of the
Equal Protection clause of the Fifth Amendment,[9] by detaining him
in administrative segregation for "punitive" reasons, as a member
of a class of inmates who refused to inform or cooperate with
authorities.[10]  Plaintiff alleges the "probability" that such

---

[9] Plaintiff also asserts a violation of the Fourteenth
Amendment.  The Fourteenth Amendment, however, constrains state
governments, not the federal government or federal actors, and
has no applicability here.  The Fourteenth Amendment claim will
be dismissed with prejudice.

[10] Plaintiff was placed in the Special Housing Unit of FCI
Fort Dix for three days, after which he was transferred to the
Metropolitan Detention Center in Brooklyn, New York.  There is no
suggestion that the FCI Fort Dix employees had any authority to
control Plaintiff's custody placement at the MDC in Brooklyn.
Accordingly, this claim relates solely to the three days spent in
the SHU prior to Plaintiff's transfer.

cooperation would have violated his Fifth Amendment privilege against self-incrimination.

Title 42 Section 1985 provides, in relevant part:

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... the person so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  To state a claim under § 1985(3), one must allege:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 829 (1983).  With respect to the second element, the conspiracy must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

Thus, in order to state a claim under § 1985, there must be factual allegations suggesting some racial or otherwise invidiously discriminatory animus behind the alleged conspirators' actions.  See Kush v. Rutledge, 460 U.S. 719, 724-

24

26 (1983).  No such allegations are set forth in the Complaint.
To the contrary, the basis of the alleged equal protection
violation, is the refusal to "inform" or "cooperate."
Accordingly, Plaintiff has failed to state a § 1985 claim.

Plaintiff also has failed to state a claim under 42 U.S.C.
§ 1986.  Section 1986 provides, in pertinent part:

> Every person who, having knowledge that any of the
> wrongs conspired to be done, and mentioned in section
> 1985 of this title, are about to be committed, and
> having power to prevent or aid in preventing the
> commission of the same, neglects or refuses so to do,
> if such wrongful act be committed, shall be liable to
> the party injured, or his legal representatives, for
> all damages caused by such wrongful act, which such
> person by reasonable diligence could have prevented;
> and such damages may be recovered in an action on the
> case; and any number of persons guilty of such wrongful
> neglect or refusal may be joined as defendants in the
> action ... .

42 U.S.C. § 1986.

Plaintiff has failed to state a claim under § 1985;
accordingly, he fails to state a derivative § 1986 claim.  See
Koorn v. Lacey Twp., 78 Fed. Appx. 199, 208 (3d Cir. 2003)
(citing Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d
1085, 1088 (2d Cir. 1993)); Grimes v. Smith, 776 F.2d 1359, 1363
n.4 (7th Cir. 1985).  Therefore, the § 1985 and 1986 conspiracy
claims will be dismissed with prejudice.

Plaintiff also asserts a claim for conspiracy to deprive him
of his rights directly under the Equal Protection Clause of the
Fifth Amendment.  However, Plaintiff has failed to allege facts

sufficient to demonstrate any "conspiracy."  The Supreme Court

has demonstrated the application of <u>Twombly</u>'s general pleading

standards to a conspiracy claim.

> In applying these general standards to a
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken
> as true) to suggest that an agreement was made.  ...
> It makes sense to say, therefore, that an allegation of
> parallel conduct and a bare assertion of conspiracy
> will not suffice.  Without more, parallel conduct does
> not suggest conspiracy, and a conclusory allegation of
> agreement at some unidentified point does not supply
> facts adequate to show illegality.  Hence, when
> allegations of parallel conduct are set out in order to
> make a [conspiracy] claim, they must be placed in a
> context that raises a suggestion of a preceding
> agreement, not merely parallel conduct that could just
> as well be independent action.
>
> The need at the pleading stage for allegations
> plausibly suggesting (not merely consistent with)
> agreement reflects the threshold requirement of Rule
> 8(a)(2) that the "plain statement" possess enough heft
> to "sho[w] that the pleader is entitled to relief."  A
> statement of parallel conduct, even conduct consciously
> undertaken, needs some setting suggesting the agreement
> necessary to make out a [conspiracy] claim ... .

<u>Twombly</u>, 550 U.S. at 556-57 (citations and footnotes omitted).

Here, at most, Plaintiff has pleaded only parallel conduct.  He

has failed to allege facts demonstrating "agreement."

Accordingly, Plaintiff has failed to state a general claim for

conspiracy to deprive him of his equal protection rights by

confining him in the SHU for refusing to cooperate.  All of these

"conspiracy" claims will be dismissed with prejudice.

C.   <u>The Equal Protection Claim</u>

Plaintiff alleges that the Defendants Donna Zickefoose,

26

Jacqueline B. Nichols, Janel Fitzerald, D. Adams, Mr. MicKinnon, Mr. Emmert, Tracy Sims, and unknown BOP officials individually deprived him of equal protection, in violation of the Fifth Amendment, by "punitively" confining him in administrative segregation because he refused to "inform" or "cooperate" in connection with the investigation of the prisoner disturbance.[11] Plaintiff asserts here a "probability" that cooperation would have violated his Fifth Amendment privilege against self incrimination; Petitioner does not allege that he asserted his right against self-incrimination at the time of the investigation.[12]

Although the Fifth Amendment by its own terms does not reference equal protection, the Supreme Court has interpreted it to include an equal protection element, see Bolling v. Sharpe, 347 U.S. 497, 499 (1954), that the Supreme Court has analyzed identically to the Equal Protection Clause of the Fourteenth Amendment, see, e.g., Buckley v. Valeo, 424 U.S. 1, 93 (1976).

---

[11] Plaintiff also asserts a violation of the Due Process Clause of the Fourteenth Amendment.  The Fourteenth Amendment, however, constrains state governments, not the federal government or federal actors, and has no applicability here.  The Fourteenth Amendment claim will be dismissed with prejudice.

[12] Indeed, this characterization of the claim is contrary to the Affidavit attached to the Complaint, in which Plaintiff asserts that he told investigators that he knew nothing of who pulled the fire alarm.  Plaintiff alleges that he also responded to investigators, as a hypothetical, that if he knew anything he would not provide that information but that, in any event, he did not know anything.  (Affidavit, ¶ 7.)

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

If a prison policy neither burdens a fundamental right,[13] nor targets a suspect class,[14] it does not violate equal protection so long as it bears a rational relationship to some legitimate end.  See U.S. v. Lopez, 650 F.3d 952, 960 (3d Cir.

---

[13] For equal protection purposes, "fundamental rights" include such constitutional rights as the right of interstate travel, Shapiro v. Thompson, 394 U.S. 618 (1969), the right to vote, Bullock v. Carter, 405 U.S. 134 (1972), rights guaranteed by the First Amendment, Williams v. Rhodes, 393 U.S. 23 (1968), the right to procreate, Skinner v. Oklahoma, 316 U.S. 535 (1942), and rights of a uniquely private nature, Roe v. Wade, 410 U.S. 113 (1973).  See generally U.S. v. Williams, 124 F.3d 411, 422 (3d Cir. 1997).

[14] Statutes that classify by race, alienage, or national origin are subject to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest.  See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440 (1985).

2011) (citing Doe v. Pa. Bd. of Probation & Parole, 513 F.3d 95, 107 (3d Cir. 2008)).  Under rational basis review, a classification will be upheld "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  Heller v. Doe, 509 U.S. 312, 320 (199).  The party challenging the classification bears the burden to negate "every conceivable basis which might support it[.]" Id.

Here, it can hardly be contested that prison authorities have a legitimate institutional security purpose in encouraging prisoners to cooperate with respect to investigations of prison disturbances and in discouraging participation in such disturbances.  Thus, there is a rational relationship between segregating prisoners, during an investigation, who are suspected of being involved in such disturbances or of withholding relevant information regarding such disturbances.  That being so, there was a rational basis for segregating Plaintiff, who characterizes himself as uncooperative.

Neither is this Court persuaded by Plaintiff's self-serving contention that cooperation might have burdened his Fifth Amendment right against self-incrimination.  The Supreme Court has noted that, while the privilege against self-incrimination does not terminate at the jailhouse door, the fact of a valid conviction and the ensuing restrictions on liberty are essential

29

to the analysis of a prisoner's Fifth Amendment claim, as it relates to conditions of confinement.  See McKune v. Lile, 536 U.S. 24, 36 (2002).  Thus, the privilege against self-incrimination does not extend to prison disciplinary proceedings.  See Baxter v. Palmigiano, 425 U.S. 308 (1976).  Similarly, the privilege against self-incrimination does not prohibit the withholding of privileges from inmates who refuse to admit guilt in order to participate in a sex offender treatment program, McKune v. Lile, 536 U.S. 24 (2002), even where the refusal to admit guilt might have a negative impact on a prisoner's parole decision, Thorpe v. Grillo, No. 00-3171, 80 Fed.Appx. 215 (3d Cir. Oct. 31, 2003).  Here, Plaintiff inconsistently asserts a lack of relevant knowledge about the prison disturbance at the same time he asserts that cooperation would have burdened his right against self-incrimination.  To the extent he feared an institutional discipline charge, the Fifth Amendment did not protect him from cooperation in the investigation.  Nor did the transfer into the SHU during the investigation unconstitutionally burden his right against self-incrimination.  This equal protection claim will be dismissed with prejudice.

D.    The Due Process Claims

Plaintiff alleges that his confinement in SHU amounted to

30

"atypical hardship" in violation of the Due Process Clause.[15]
Plaintiff alleges that during the three days he was confined in
SHU at FCI Fort Dix, he was triple-bunked in a cell that was
dirty and poorly-ventilated.  Plaintiff alleges that he was
compelled to sleep on the floor those three days.

A liberty interest protected by the Due Process Clause may
arise from either of two sources:  the Due Process Clause itself
or legislative enactments.  See Hewitt v. Helms, 459 U.S. 460,
466 (1983); Asquith v. Department of Corrections, 186 F.3d 407,
409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s
long as the conditions or degree of confinement to which the
prisoner is subjected is within the sentence imposed upon him and
is not otherwise violative of the Constitution, the Due Process
Clause does not in itself subject an inmate's treatment by prison
authorities to judicial oversight." Montanye v. Haymes, 427 U.S.
236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v.
Conner, 515 U.S. 472, 480 (1995).  Cf. Washington v. Harper, 494

_____

[15] Plaintiff seems to want to assert this claim with respect
to his confinement in SHU at both FCI Fort Dix and the
Metropolitan Detention Center.  However, there are no factual
allegations suggesting that any named defendant in New Jersey had
any responsibility for the conditions under which Plaintiff was
confined at the MDC.  Neither are there any factual allegations
suggesting that this Court could exercise any jurisdiction over
any fictitious defendants with respect to events that occurred at
the MDC.  Accordingly, all claims arising out of Plaintiff's
confinement at MDC will be dismissed, without prejudice insofar
as they are asserted against fictitious defendants.

U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime).

"Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." Sandin, 515 U.S. at 485 (upholding prisoner's sentence of 30 days' disciplinary segregation following a hearing at which he was not permitted to produce witnesses). See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

Governments, however, may confer on prisoners liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. Id.

Here, Plaintiff's confinement in SHU for three days during an ongoing investigation of a prison disturbance, under the conditions he describes, does not amount to "atypical and significant hardship." This claim will be dismissed with prejudice.

33

Plaintiff also alleges that Warden Donna Zickefoose and Case Manager Oleson violated his right to procedural due process by failing to submit his request for a public safety factor waiver to the Designation Sentence Computation Center Administrator. See BOP Program Statement 5100.08 "Inmate Security Designation and Custody Classification."[16]

It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.  Neither do BOP program statements give prisoners any such liberty interest.  See, e.g., Green v. Williamson, 241 Fed.Appx. 820, 822 (3d Cir. June 18, 2007).  As Plaintiff has no liberty interest in a particular custody level, the defendants were not obliged to forward his request for a waiver.  To the contrary, the named defendants properly considered his request and rejected it based on an appropriate exercise of their discretion.  This claim will be dismissed with prejudice.

---

[16] It appears that Plaintiff has exhausted his administrative remedies with respect to this claim.  The administrative remedy documentation attached to the Complaint reflects that the request for a waiver of his Greatest Severity PSF was denied at every level because of the serious nature of his criminal offense and his role in that offense, the length of time remaining on his sentence, and the short period of time he had been confined at FCI Fort Dix before submitting his waiver request.

E.    The Eighth Amendment Claim

     Plaintiff alleges that his confinement in administrative segregation violated his right under the Eighth Amendment to be free from cruel and unusual punishment.[17]

     The Eighth Amendment to the United States Constitution prohibits the government from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Id. at 31.

     To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently

_____

     [17] Again, as noted previously with respect to Plaintiff's due process claims, there are no factual allegations suggesting that the named defendants had any responsibility for the conditions of Plaintiff's confinement at MDC in Brooklyn.  Nor is there any basis for this Court to assert jurisdiction over fictitious defendants who might have responsibility for the conditions of confinement at MDC.  Accordingly, all Eighth Amendment claims arising out of Plaintiff's confinement at MDC will be dismissed.

grave to form the basis of an Eighth Amendment violation."
Helling v. McKinney, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at
346).  This component requires that the deprivation sustained by
a prisoner be sufficiently serious, for only "extreme
deprivations" are sufficient to make out an Eighth Amendment
claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

The subjective component requires that the state actor have
acted with "deliberate indifference," a state of mind equivalent
to a reckless disregard of a known risk of harm.  See Farmer v.
Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component of a
conditions-of-confinement claim if he can show that the
conditions alleged, either alone or in combination, deprive him
of "the minimal civilized measure of life's necessities," such as
adequate food, clothing, shelter, sanitation, medical care, and
personal safety.  Rhodes, 452 U.S. at 347-48; Young v. Quinlan,
960 F.2d 351, 364 (3d Cir. 1992).  However, while the Eighth
Amendment directs that convicted prisoners not be subjected to
cruel and unusual punishment, "the Constitution does not mandate
comfortable prisons."  Rhodes, 452 U.S. at 349.  To the extent
that certain conditions are only "restrictive" or "harsh," they
are merely part of the penalty that criminal offenders pay for
their offenses against society.  Id. at 347.  An inmate may
fulfill the subjective element of such a claim by demonstrating

that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Here, Plaintiff has failed adequately to plead either the objective or the subjective element. The conditions described amount to nothing more than temporary discomfort. Moreover, Plaintiff does not allege that he complained to any of the named defendants about the conditions of his confinement or that the defendants otherwise had any knowledge of any of the allegedly unconstitutional conditions. This claim will be dismissed with prejudice.

F.    The Claim under the Federal Tort Claims Act

Plaintiff asserts a claim against the United States for "false imprisonment" under the Federal Tort Claims Act, asserting that the prison officials lacked authority to confine him in administrative segregation.

The United States has sovereign immunity except where it consents to be sued. United States v. Mitchell, 463 U.S. 206, 212 (1983). The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq., represents such a limited waiver of the sovereign immunity of the United States. 28 U.S.C. § 2679(b)(1). The Federal Tort Claims Act gives a district court exclusive jurisdiction over civil actions:

37

> [1] against the United States, [2] for money damages,
> ... [3] for injury or loss of property, ... [4] caused
> by the negligent or wrongful act or omission of any
> employee of the Government [5] while acting within the
> scope of his office or employment, [6] under
> circumstances where the United States, if a private
> person, would be liable to the claimant in accordance
> with the law of the place where the act or omission
> occurred.

Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995)

(quoting 28 U.S.C. § 1346(b)); see also Federal Deposit Ins.

Corp. v. Meyer, 510 U.S. 471, 477 (1994); United States v. Muniz,

374 U.S. 150 (1963).

The FTCA waiver of sovereign immunity does not apply to

certain types of torts, as follows:

> The provisions of this chapter and section 1346(b) of
> this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an
> employee of the Government, exercising due care,[18] in
> the execution of a statute or regulation, whether or
> not such statute or regulation be valid, or based upon
> the exercise or performance or the failure to exercise
> or perform a discretionary function or duty on the part
> of a federal agency or an employee of the Government,
> whether or not the discretion involved be abused.[19]

---

[18] The point of the "due care" exception is "to preclude
testing the legality of a statute or regulation by a tort
action." See Stewart v. United States, 486 F.Supp. 178, 181
(C.D. Ill. 1980); see also H.R.Rep. No. 101-1015, at 134-36
(1991) ("Nor is it desirable or intended that the
constitutionality of legislation or the legality of a rule or
regulation should be tested through the medium of a damage suit
for tort." (quoting H.R.Rep. No. 2245, 77th Cong., 2d Sess., at
10 (1942))).

[19] Any claim based upon an intentional tort described in
§ 2680(h) must first clear the hurdle of § 2680(a). See Medina
v. United States, 259 F.3d 220 (4th Cir. 2001).

38

...

(h) Any claim arising out of assault, battery, false
imprisonment, false arrest, malicious prosecution,
abuse of process, libel, slander, misrepresentation,
deceit, or interference with contract rights: Provided,
That, with regard to acts or omissions of investigative
or law enforcement officers of the United States
Government, the provisions of this chapter and section
1346(b) of this title shall apply to any claim arising,
on or after the date of the enactment of this proviso,
out of assault, battery, false imprisonment, false
arrest, abuse of process, or malicious prosecution. For
the purpose of this subsection, "investigative or law
enforcement officer" means any officer of the United
States who is empowered by law to execute searches, to
seize evidence, or to make arrests for violations of
Federal law.

...

28 U.S.C. § 2680.

In Pooler v. United States, 787 F.2d 868, 872 (3d Cir.

1986), the Court of Appeals for the Third Circuit held that any

FTCA claim for an intentional tort under § 2680(h) must have

occurred during an arrest, search or seizure.  Thus, a prisoner

such as Plaintiff, who is already serving a federal sentence, has

no viable claim for false imprisonment in SHU pending an

investigation of a prison disturbance or the prisoner's

involvement in the prison disturbance.  See Logan v. United

States, Civil No. 11-7235, 2012 WL 2979041 (D.N.J. July 20,

2012).  This claim will be dismissed with prejudice.

G.   The Fourth Amendment Claim

Plaintiff asserts that his confinement in administrative

segregation amounted to an unreasonable seizure in violation of

39

the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Cont., amend. IV. A "seizure" triggering Fourth Amendment protection occurs when a person's freedom of movement is terminated or restrained, either by physical force or a show of authority, intentionally applied. Brendlin v. California, 551 U.S. 249, 254 (2007). Here, however, Plaintiff was already incarcerated pursuant to a legitimate criminal conviction. Under those circumstances, transfer to the SHU for a few days, under conditions that do not amount either to cruel and unusual punishment or to an unconstitutional deprivation of liberty, for purposes of ensuring the security of the institution, inmates, and staff, cannot be considered "unreasonable." This claim will be dismissed with prejudice. See DeJesus v. Odom, Civil No. 12-0306, 2012 WL 4023346, *5 (E.D. Wis. Sept. 12, 2012); Ratigan v. Trogvac, Civil No. 08-1667, 2009 WL 648931 (M.D. Pa. March 11, 2009).

Plaintiff also asserts that the defendants unreasonably seized his "papers," in connection with his transfer to administrative segregation, in violation of the Fourth Amendment prohibition against unreasonable searches and seizures.

"The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."

40

Hudson v. Palmer, 468 U.S. 517, 526 (1984).  Thus, the allegation that Plaintiff's cell was improperly searched, and that certain personal property was illegally removed, fails to state a claim for violation of the Fourth Amendment.  See Crosby v. Piazza, 465 Fed.Appx. 168, *3 (3d Cir. Feb. 29, 2012).  This claim will be dismissed with prejudice.[20]

H.   The Request for Class Certification

In summary fashion, Plaintiff seeks certification of a class of "non-informant inmates" with respect to his claims arising out of the placement of prisoners into administrative segregation, asserted under 42 U.S.C. §§ 1985 and 1986, the Equal Protection Clause of the Fifth Amendment, and the Fourth Amendment.

Rule 23 of the Federal Rules of Civil Procedure allows a class action if certain requirements are met.  First, the class must meet the "prerequisites" of Rule 23(a):  (1) numerosity (a "class so numerous that joinder of all members is impracticable"), (2) commonality (that "there are questions of law or fact common to the class"), (3) typicality ("the claims ... of the representative parties are typical of the claims ...

---

[20] The same result would obtain if this claim were construed as a claim for deprivation of property without due process.  A prisoner has no cognizable due process claim if the prisoner has an adequate post-deprivation remedy.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984).  Here, Plaintiff had remedies under the prison grievance procedure and the Federal Tort Claims Act.  Accordingly, the Complaint does not state a due process claim, either.

of the class"), and (4) adequacy (that "the representative parties will fairly and adequately protect the interests of the class"). Second, the class must fit one of the Rule 23(b) types of classes: (1) cases in which there is a threat of inconsistent, varying, or impeding adjudications against individual class members if the case is not adjudicated as a class action, (2) cases in which final injunctive or declaratory relief is appropriate for the class as a whole, or (3) cases in which the common questions of law and fact predominate over individual inquiries and a class action is the optimal way to fairly and efficiently adjudicate the controversy. See generally Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613 (1997).

"[A] thorough examination of the factual and legal allegations" may be necessary when deciding a motion for class certification. Newton v. Merril Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166 (3d Cir. 2001). Nonetheless, "it is not necessary for the plaintiffs to establish the merits of their case at the class certification stage" and "the substantive allegations of the complaint must be taken as true." In re Chiang, 385 F.3d 256, 262 (3d Cir. 2004).

Here, Plaintiff has failed to assert facts establishing that certification of a class is appropriate or that he would function as an adequate class representative. More specifically, for example, with respect to the "numerosity" requirement, Plaintiff

42

has failed to allege any facts regarding the number of purported class members.  While 121 prisoners were placed in SHU in connection with the events described, only a fraction were allegedly placed in SHU because they were not cooperating.  The rest were placed in SHU because they were suspected of being involved in either the circulation of contraband or the disruptions of prison operations.  With respect to the "adequacy" requirement, Plaintiff has failed to demonstrate that he would fairly and adequately protect the interests of the class.  To the contrary, he has been unable to state a single viable claim.  Nor has Plaintiff alleged any facts suggesting that he has made any attempt to locate appropriate class counsel.

Moreover, Plaintiff has failed to allege facts suggesting that this is an appropriate class action under Rule 23(b). Prisoner cases challenging conditions of confinement routinely proceed as individual claims; thus, it is not likely that there is a threat of inconsistent adjudications against individual class members if detainees' claims proceed individually. Finally, the Complaint does not demonstrate that common questions of law and fact predominate over individual inquiries.  To the contrary, for example, questions regarding the circumstances of segregation are likely to depend upon highly individualized facts.

For all of these reasons, this Court will deny the

43

application for class certification contained in the Complaint.

V.   <u>CONCLUSION</u>

For the reasons set forth above, all claims will be dismissed.  It does not appear that Plaintiff could amend to cure the deficiencies noted in this Opinion.  However, if Plaintiff believes that he can cure the deficiencies, he may apply to re-open and amend, attaching to any such application a proposed amended complaint.[21]

An appropriate order follows.

S/Robert B. Kugler
Robert B. Kugler
United States District Judge

Dated: November 15, 2012

---

[21] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, <u>Federal Practice and Procedure</u> § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  <u>Id.</u>  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  <u>Id.</u>