# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

DEMETRIUS BROWN,                              :
                                              :
              Plaintiff,                      :        Civ. No. 11-4421 (RBK) (AMD)
                                              :
       v.                                     :        **OPINION**
                                              :
UNITED STATES, et al.,                        :
                                              :
              Defendants.                     :
_____ :

## ROBERT B. KUGLER, U.S.D.J.

### I.        INTRODUCTION

Plaintiff is a former federal prisoner who was previously incarcerated at F.C.I. Fort Dix in Fort Dix, New Jersey.[1]  He is proceeding *pro se* with an amended complaint pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), alleging violations of his constitutional rights.  His original complaint was dismissed predominantly with prejudice for failure to state a claim upon which relief could be granted.  Nevertheless, plaintiff was given the opportunity to submit a motion to reopen and file an amended complaint.

Subsequently, plaintiff filed an application to reopen along with an amended complaint. Therefore, the Clerk will be ordered to reopen this case and file the amended complaint.  At this time, the Court must review the amended complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit.  For the following reasons the amended complaint will be dismissed.  However, plaintiff shall be given leave to file a second amended complaint on his claims that are being dismissed without prejudice.

_____
[1] Plaintiff has been released from federal custody since filing this action.

## II.     BACKGROUND

A. Factual Allegations of Amended Complaint

For purposes of this screening, the allegations of the amended complaint will be construed as true.  Plaintiff names as defendants the following:  (1) Donna Zickefoose – Warden F.C.I. Fort Dix; (2) Jacqueline B. Nichols – Associate Warden F.C.I. Fort Dix; (3) Janel Fitzgerald – Captain F.C.I. Fort Dix; (4) D. Adams – Special Investigative Agent F.C.I. Fort Dix; (5) Mr. McKinnon – Unit Manager F.C.I. Fort Dix; (6) Mr. Emmert & Mr. Olesen – Case Managers F.C.I. Fort Dix; (7) Tracey Sims – Counsel F.C.I. Fort Dix; (8) Unknown Bureau of Prison Officials; and (9) the United States.

Plaintiff states that upon arriving at F.C.I. Fort Dix in April, 2008, he was placed in general population Unit 5711.  Plaintiff alleges that on January 26, 2010, a series of disturbances occurred in the East Side of F.C.I. Fort Dix.  Specifically, at the beginning of the 4:00 p.m. stand up count, Unit 5703 inmates activated multiple pull-station fire alarms in the housing unit, disrupting normal operations and the taking of the count.  Thereafter, a Disturbance Control Team ("DCT") was called to assist in clearing Unit 5703 and to conduct a mass shakedown of the housing unit.  Two inmates were placed in the Special Housing Unit ("SHU") for disorderly behavior.

On January 27, 2010, based on information gathered in the initial interviews, prison staff conducted follow-up interviews of the inmates.  At the conclusion of these follow-up interviews, eight inmates were scheduled to be placed immediately into the SHU.

As the follow-up interviews were being conducting on January 27, 2010, all but fifteen of the 334 inmates at the Satellite Camp refused to attend the noon meal.  At the conclusion of

interviews at the Satellite Camp, forty-two inmates were scheduled for placement at the SHU and were transported there by bus.

On January 28, 2010, to relieve overcrowding at the SHU, forty inmates were bussed to the Federal Medical Center at Devens, Massachusetts, pending transfer to another facility.  Later that day, fire-alarm pull stations were activated once in Unit 5703 and twice in Unit 5711.  The DCT again escorted inmates from the unit for interviews and conducted a shakedown search of 5711.  DCT staff transported an additional thirty-four inmates from Units 5703 and 5711 to the SHU.

As interviews were being conducted of Unit 5711 inmates, a fire-alarm pull station in Unit 5702 was then activated.  Staff interviewed Unit 5702 inmates, and one inmate from Unit 5702 was placed in the SHU for attempting to disrupt the interviews.

On January 29, 2010, to relieve overcrowding in the SHU, thirty-nine inmates were transported to the Metropolitan Detention Center in Brooklyn, New York ("MDC – Brooklyn").  Later, an additional thirty-four inmates from Unit 5711 and two inmates from Unit 5702 were placed in SHU.

On February 3, 2010, to relieve overcrowding in the SHU, forty inmates were transported to FMC at Devens, Massachusetts.  Following their departure, forty inmates from Unit 5702 were then placed in the SHU.

Plaintiff alleges that from January 26 through 29, 2010, over 700 inmates were interviewed in connection with the repeated activation of the fire-alarms as well as for the introduction of contraband into the housing units.  Plaintiff states that inmates identified as being involved in either contraband trafficking or acting disruptively were placed in the SHU.  Plaintiff claims that inmates who "boisterously" resisted the interview or shakedowns were also placed in

the SHU.  Nonetheless, plaintiff alleges that individual incident reports were not issued due to a lack of evidence.

With respect to these incidents, the amended complaint further states that while plaintiff was watching television on January 26, 2010, the buzzard for the fire alarm sounded but ceased after several minutes.  Subsequently, after ten to fifteen minutes, the buzzard sounded again. Plaintiff noticed Unit Counselor Sims appearing to do a check.  Plaintiff overheard Sims explain to someone else that there was a system malfunction with the fire alarms.  Later on January 26, 2010, Sims was doing a walkthrough and stopped by plaintiff's room in Room 247 of Unit 5711. Sims noticed that several jackets had been hooked over the bedposts and plaintiff was told not to place the jackets over the bedposts.

At around 1:00 p.m. on January 28, 2010, the buzzard for the fire alarm went off again. The inmates were ordered to exit the building.  Thereafter, Unit Manager McKinnon and Captain Janel Fitzgerald stated that an investigation was being conducted with respect to who pulled the fire alarm and that until the investigation was completed, Unit 5711 would remain on lockdown. That evening, inmates (including plaintiff), were escorted by gunpoint by staff dressed in black fatigues to be interviewed.  Plaintiff was interviewed and said that he knew nothing about the buzzing of the fire alarms.  He also responded to a hypothetical that if he knew anything he still would not tell as it would violate his right to silence and self-incrimination.

On January 29, 2010, an Assistant Warden came down to issue an ultimatum designed to discover who was responsible for pulling the fire alarms.  He advised the inmates that privileges would be taken away until the discovery was made.

Subsequently, staff members in black fatigues with guns entered the building to escort selected inmates to an awaiting bus outside.  Case Manager Emmert was one of these staff

members.  Plaintiff's name was called by Emmert and plaintiff was placed in plastic handcuffs and escorted to the bus waiting outside.  Plaintiff noticed Counselor Sims and another staff member looking at the bus and pointing and laughing.  After thirty-four inmates were selected, the bus started and exited the East Compound.  Plaintiff was in pain due to the plastic handcuffs on the ride on the bus to the SHU.

Upon arriving at the SHU, plaintiff was placed into a two-man cell where two other inmates already resided.  Plaintiff was instructed to sleep on the floor and given a bed mat to do so.  Plaintiff was forced to sleep at the foot of the toilet in the room.  The toilet/sink leaked water and dust covered the walls and floor.  Plaintiff was deprived of fresh air and warmth due to the lack of ventilation.  Plaintiff also states that he could not properly breath and that his bones ached due to having to sleep on the floor.

On February 1, 2010, while in the SHU, plaintiff submitted an inmate request form which requested notice of any charges filed against him.

On February 2, 2010, staff members, including the warden, assistant wardens, lieutenants, and captain made their weekly rounds to the SHU, attending to inmate problems.  Plaintiff questioned Captain Fitzgerald about the status of his request for notice of any charges filed against him as well as how much longer he would be detained in the SHU.  Captain Fitzgerald responded that he would be detained for three weeks.

On February 3, 2010, plaintiff was moved to another two-man cell which already had two inmates residing in it.  Plaintiff once again had to sleep on the cold floor.

On February 4, 2010, plaintiff was transferred to MDC - Brooklyn.  Plaintiff alleges that he had no access to the outdoors as well as lacked exercise equipment, religious services and educational facilities compared to a normal institutional setting while incarcerated in

administrative detention at MDC – Brooklyn.  Plaintiff also alleges that he was deprived of proper nourishment at MDC – Brooklyn as the calorie intake was designed only for sedentary persons.  Furthermore, plaintiff claims that he was deprived of sleep as the lights remained on in his cell all night and that he was deprived of clean bedding.  Plaintiff also states that he was deprived of his property as well as dental care while at MDC – Brooklyn.   On May 12, 2010, plaintiff was transported back to F.C.I. Fort Dix.

The amended complaint then details plaintiff's attempt to exhaust his administrative remedies.  Plaintiff states that he attempted to informally pursue his grievances and then ultimately returned a BP-8 remedy form to Counselor Reyes on July 20, 2010 surrounding his administrative detention.  Plaintiff states that he received a response from Fitzgerald who granted in part his request for his Administrative Detention order.  Additionally, on July 19, 2010, petitioner submitted a "small claims form" to the Regional Director which requested monies for damages or lost properties as a result of his administrative detention.

Plaintiff also details that he had a pending habeas appeal before the United States Court of Appeals for the Third Circuit when he was transferred to MDC – Brooklyn.  He claims that the administrative officials at F.C.I. Fort Dix did not seek approval from the court for this transfer.  Furthermore, plaintiff claims that administration officials retained his property and legal papers while in administrative detention.  Ultimately, plaintiff states that the Third Circuit denied his appeal from his habeas case after he was transferred back to F.C.I. Fort Dix from MDC – Brooklyn.

Petitioner also claims that in 2012 he developed and was diagnosed with Bell's Palsy which caused facial paralysis on his right side.  Plaintiff states in the complaint that he has received treatment for his Bell's Palsy.

B.  Dismissal of Plaintiff's Original Complaint

Plaintiff initially filed a complaint in this action in 2011.  In that complaint, plaintiff raised the following claims:  (1) conspiracy; (2) equal protection violation; (3) due process violation; (4) cruel and unusual punishment; (5) federal tort claim; (6) unreasonable search and seizure; and (7) procedural due process violation.  Petitioner also sought class certification.

Subsequently, the Court screened the original complaint.  Initially, the Court determined that, "the claims arising out of his placement into SHU, his alleged lack of access to (or loss of) personal property, and his alleged loss of prison wages are dismissible with prejudice for failure to exhaust administrative remedies."  (Dkt. No. 2 at p. 23.)  Nevertheless, the Court also analyzed each claim on the merits and found that plaintiff had failed to state a claim upon which relief could be granted.

The Court first discussed plaintiff's conspiracy claims which argued that the individual defendants conspired to deprive him of equal protection by detaining him in administrative segregation for punitive reasons.  The Court noted that plaintiff failed to allege that there was any racial or otherwise invidiously discriminatory animus behind the purported conspirators' actions, as the basis of plaintiff's claim was his refusal to inform or cooperate with prison officials.  Additionally, the Court explained that plaintiff failed to allege facts sufficient to demonstrate a conspiracy as he had only pleaded parallel conduct.  Accordingly, his conspiracy claims were dismissed with prejudice for failure to state a claim.

Next, the Court analyzed plaintiff's equal protection claim which argued that the defendants violated his equal protection rights by punitively confining him in administrative segregation due to his failure to inform or cooperate with the investigation of the prison disturbances.  The Court found that there was "a rational relationship between segregating

7

prisoners, during an investigation, who are suspected of being involved in such disturbances or of withholding relevant information regarding such disturbances."  (Dkt. No. 2 at p. 29.) Furthermore, the Court was not persuaded with plaintiff's argument that his cooperation would have burdened his Fifth Amendment right against self-incrimination.  (*See id.*)

Plaintiff next alleged that his confinement in the SHU amounted to an atypical hardship that violated his due process rights.  Ultimately, the Court dismissed this claim with prejudice after determining that plaintiff's confinement in the SHU for a few days during an ongoing investigation did not amount to an atypical and significant hardship necessary to sustain a due process claim.

Plaintiff also claimed that his right to procedural due process was violated when defendants Zickefoose and Oleson failed to submit his request for a public safety factor waiver to the Designation Sentence Computation Center Administrator.  This claim was also dismissed with prejudice as it was determined that plaintiff had no liberty interest in a particular custody level.

Next, plaintiff raised a claim that his rights were violated under the Eighth Amendment to be free from cruel and unusual punishment.  The Court dismissed this claim with prejudice after determining that plaintiff had failed to allege both the objective and subjective components to state an Eighth Amendment conditions of confinement claim.  The Opinion noted that the conditions at F.C.I. Fort Dix amounted to nothing more than temporary discomfort and that the complaint failed to allege that he complained to any of the named defendants about the purported unconstitutional conditions.

Plaintiff next attempted to raise a claim under the Federal Tort Claims Act.  Plaintiff claimed that the prison officials lacked authority to confine him in administrative segregation.

This claim was dismissed with prejudice after the Court determined that "a prisoner, such as Plaintiff, who is already serving a federal sentence, has no viable claim for false imprisonment in SHU pending an investigation of a prison disturbance or the prisoner's involvement in the prison disturbance." (Dkt. No. 2 at p. 39.)

Plaintiff also argued in his original complaint that his confinement in administrative segregation amounted to an unreasonable search and seizure which violated the Fourth Amendment. The Court noted that plaintiff was already incarcerated pursuant to a legitimate criminal conviction such that "transfer to the SHU for a few days, under conditions that do not amount either to cruel and unusual punishment or to an unconstitutional deprivation of liberty, for purposes of ensuring the security of the institution, inmates, and staff, cannot be considered 'unreasonable.'" (*Id.* at p. 40.) Additionally, plaintiff's claims that defendants unreasonably seized his papers in connection with his transfer to administrative segregation also failed to state a claim as the Fourth Amendment did not proscribe against unreasonable searches within the confines of a prison cell. Accordingly, plaintiff's Fourth Amendment claims were also dismissed with prejudice.

Finally, the Court denied plaintiff's request for class certification. The Court noted that plaintiff "failed to allege any facts regarding the number of purported class members." (*Id.* at p. 43.) Additionally, it was noted that he failed to allege facts suggesting that this is an appropriate class action under Federal Rule of Civil Procedure 23(b) as challenges to conditions of confinement were routinely presented in individual actions. The Court also explained that the complaint did not demonstrate that common questions of law and fact predominated over individual inquiries.

Based on the foregoing, the Court dismissed all of plaintiff's claims with prejudice with the exception that plaintiff's claims arising out of his confinement at MDC – Brooklyn were dismissed without prejudice but only "insofar as they are asserted against fictitious defendants employed at MDC or elsewhere outside of New Jersey[.]"[2]  (Dkt. No. 3 at p. 1-2.)  Petitioner was given leave to submit an amended complaint and he has in fact done so.

C.   Plaintiff's Legal Claims in Amended Complaint

In his amended complaint, plaintiff raises similar claims that were dismissed with prejudice in his original complaint.  More specifically, plaintiff re-alleges his conspiracy, equal protection, procedural due process, cruel and unusual punishment and Federal Tort Claims Act claims against the same defendants he sought relief against in his original complaint.

Plaintiff also includes in his amended complaint a "Retaliation and Denial of Access to Court" claim against defendants Zickefoose, Nichols, Fitzgerald, Adams, McKinnon, Emmert, Sims and other unknown BOP officials.  He alleges that these defendants, from on or about January 29, 2010 to May 12, 2010:

> each individually and/or in their personal capacity while aiding and abetting the other, did knowingly and intentionally retaliate against Demetrius Brown because he exercised his constitutional right under the First Amendment for the Redress of Grievance by filing his Habeas Corpus claim over the heads of BOP Officials and directly into Court without having to exhaust administrative

---

[2] Indeed, the Court noted in the previous Opinion that:

> Plaintiff seems to want to assert this claim [cruel and unusual punishment] with respect to his confinement in SHU at both FCI Fort Dix and the Metropolitan Detention Center.  However, there are no factual allegations suggesting that any named defendant in New Jersey had any responsibility for the conditions under which Plaintiff was confined at the MDC.  Accordingly, all claims arising out of Plaintiff's confinement at MDC will be dismissed, without prejudice insofar as they are asserted against fictitious defendants.

(Dkt. No. 2 at p. 31.)

> remedies as was unnecessary and, against his right to speech
> claiming he would not "inform"/cooperate in an investigation on
> regulation violations, thus detaining him and denying him access to
> court with assistance or help in violation of the First Amendment
> to the United States Constitution[.]

(Dkt. No. 6-1 at p. 34-35.)  As with his original complaint, plaintiff again seeks class

certification so that he can pursue his amended complaint as a class action.  (*See id.* at p. 46.)

### III.    STANDARD OF REVIEW

A.  Standard for *Sua Sponte* Dismissal

District courts must review complaints in those civil actions in which a plaintiff is

proceeding *in forma pauperis*.  *See* 28 U.S.C. § 1915(e)(2)(B).  District courts may *sua sponte*

dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be

granted, or seeks monetary relief from a defendant who is immune from such relief.  *See id.*

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers

'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  To survive *sua sponte* screening for failure to state a claim[3], the complaint must allege

"sufficient factual matter" to show that the claim is facially plausible.  *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Belmont v. MB Inv. Partners, Inc.*, 708

F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  Moreover, while *pro se*

pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their

---

[3] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C.
§ 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of
Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per
curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

    B.  *Bivens* Actions

       *Bivens* is the federal counterpart to 42 U.S.C. § 1983.  *See Walker v. Zenk*, 323 F. App'x 144, 145 n.1 (3d Cir. 2009) (per curiam) (citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)).  In order to state a claim under *Bivens*, a plaintiff must allege:  (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that the deprivation of the right was caused by a person acting under color of federal law.  *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006) (stating that under Section 1983 "an individual may bring suit for damages against any person who, acting under color of state law, deprives another individual of any rights, privileges, or immunities secured by the United States Constitution or federal law," and that *Bivens* held that a parallel right exists against federal officials); *see also Collins v. F.B.I.*, No. 10-3470, 2011 WL 1627025, at *6 (D.N.J. Apr. 28, 2011) ("The Third Circuit has recognized that Bivens actions are simply the federal counterpart to § 1983 claims brought against state officials' and thus the analysis established under one type of claim is applicable under the other.") (internal quotation marks and citations omitted).

## IV.   DISCUSSION

    A.  Claims Previously Raised in Original Complaint and Dismissed With Prejudice

       Several of the claims that plaintiff has re-alleged in his amended complaint were previously dismissed with prejudice for failure to state a claim.  Among the claims that plaintiff re-alleges are conspiracy, equal protection, procedural due process, cruel and unusual punishment and federal tort claims act claims.  For the reasons expressed in the Court's prior

opinion, these claims were dismissed with prejudice.  The Court does not find that they then warrant further discussion in this Opinion.[4]

Additionally, it is worth noting that plaintiff's amended complaint suffers from similar defects as does his original complaint to the extent he is attempting to raise claims related to the conditions of confinement at MDC – Brooklyn.  Specifically, plaintiff fails to show that any of the defendants were responsible for plaintiff's conditions of confinement while at that facility.[5]  Accordingly, to the extent the claims in the amended complaint relate to his conditions of confinement at MDC – Brooklyn, they will again be dismissed without prejudice.

B.  Retaliation Claim

Plaintiff raises a new retaliation claim in his amended complaint.  Plaintiff states that between January 29, 2010 and May 12, 2010, defendants Zickefoose, Nichols, Fitzgerald, Adams, McKinnon, Emmert, Sims and unknown BOP officials retaliated against him because he exercised his constitutional rights under the First Amendment by filing a habeas corpus claim directly with the Court over the heads of BOP officials.

> "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."

---

[4] It is worth noting that plaintiff does attempt to argue in his amended complaint that several of the defendants were aware of the purported hardships he suffered while he was in administrative segregation at F.C.I. Fort Dix.  As the Court noted in its prior opinion, a plaintiff must allege both a subjective and an objective component.  (*See* Dkt. No. 2 at p. 35-37.)  Even if the Court were to now presume that plaintiff had successfully alleged the subjective component, the Court dismissed his Eighth Amendment claim with prejudice for a failure to allege both the subjective *and* objective component.

[5] Plaintiff alleges that defendant Zickefoose is related to Chaplain Zickefoose of MDC – Brooklyn.  However, this allegation is insufficient to state a claim that defendant Zickefoose was responsible or liable for the conditions of confinement at MDC – Brooklyn under the *Iqbal* standard.

*Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (per curiam) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

Plaintiff asserts that the defendants retaliated against him for his pursuit of a § 2241 habeas petition. In that habeas action filed in this Court in December 2008, plaintiff alleged that the sentencing court actually granted a motion to reduce his sentence to time served such that he was being held unlawfully and should be released. *See Brown v. Grondolsky*, No. 08-6367, 2009 WL 5206131, at *1 (D.N.J. Dec. 21, 2009), *aff'd by*, 392 F. App'x 905 (3d Cir. 2010) (per curiam). Ultimately, this Court determined that it lacked jurisdiction over petitioner's habeas petition his claims were more properly raised in a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. *See Brown* , 2009 WL 5206131, at *3. The Third Circuit affirmed this decision on August 27, 2010. *See Brown*, 392 F. App'x 905.

      i.     *Constitutionally Protected Conduct and Adverse Action*

The Court finds that plaintiff's § 2241 habeas filing and subsequent appeal are constitutionally protected conduct. *See, e.g.*, *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997) (noting that an individual's constitutional right of access to the court is protected by the First Amendment). With respect to the second element of stating a retaliation claim, a plaintiff must show that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." *Allah*, 229 F.3d at 225. "Examples of adverse actions that have, in certain cases, been found to support a retaliation claim include filing false misconduct reports, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001), and placing a prisoner in administrative custody[.] *Allah*, 229 F.3d at 225." *Keeling v. Barrager*, No. 11-0365, 2014 WL 1338077, at *7 (M.D. Pa. Apr. 3, 2014). In this case, the amended complaint alleges facts with respect to the second

element as it states that he was placed in administrative detention and subsequently transferred to another prison for a period of time.

    ii.   *Causal Connection*

With respect to alleging facts with respect to the third element of a retaliation claim, the plaintiff must allege that the constitutionally protected conduct was a substantial or motivating factor for the adverse response.  *See Velasquez v. Diguglielmo*, 516 F. App'x 91, 95 (3d Cir. 2013) (per curiam) (citing *Cater v. McGrady*, 292 F.3d 152, 157, 158 (3d Cir. 2002); *Rauser*, 241 F.3d at 333)).  Furthermore:

> To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually has to prove one of two things:  (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link.  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  If neither of these showings is made, then the plaintiff must show that, from the evidence in the record as a whole, the trier of fact should infer causation." *Id.*

*DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010).  While temporal proximity is relevant in First Amendment retaliation cases, *see Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002) (citing *Rauser*, 241 F.3d at 334), "'[t]he mere passage of time is not legally conclusive proof against retaliation.'"  *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir. 1993)) (other citation omitted).

    a.  Lack of Knowledge

As previously stated, plaintiff raises his retaliation claim against defendants Zickefoose, Nichols, Fitzgerald, Adams, McKinnon, Emmert, Sims and unknown BOP officials.  With the exception of defendant Zickefoose, plaintiff does not allege that defendants Nichols, Fitzgerald,

Adams, McKinnon, Emmert, Sims and unknown BOP officials even knew that he had filed and subsequently appealed a habeas petition in this Court. The fact that plaintiff does not allege that these defendants had knowledge of his protected activity warrants a finding that plaintiff failed to allege a causal connection as to defendants Nichols, Fitzgerald, Adams, McKinnon, Emmert, Sims and unknown BOP officials. *Accord Jordan v. Hastings*, No. 12-7932, 2013 WL 3810577, at *4 (D.N.J. July 22, 2013) (finding that plaintiff failed to allege causal connection to sustain retaliation claim where he failed to allege that defendants had knowledge of his constitutionally protected activity); *Griffin-El v. Beard*, No. 06-2719, 2013 WL 228098, at *5 (E.D. Pa. Jan. 22, 2013) ("[A] defendant may not be held liable for retaliation absent evidence sufficient to show that the defendant knew of the plaintiff's protected activity.") (citing *Laskaris v. Thornburgh*, 733 F.2d 260, 265 (3d Cir. 1984); *Booth v. King*, 228 F. App'x 167, 172 (3d Cir. 2007); *Jacobs v. Pa. DOC*, No. 04-1366, 2009 WL 3055324, at *5 (W.D. Pa. Sept. 21, 2009)).

      b.   Lack of Causal Connection Allegation

Plaintiff does allege that defendant Zickefoose had knowledge of his habeas filing. Therefore, further analysis is required to determine whether plaintiff has alleged retaliation claim against her. Initially, it is worth noting that while not dispositive, plaintiff filed his habeas petition in this Court in December, 2008, yet he was not sent to administrative segregation until over a year later in January, 2010. This passage of time has in some cases been found to be too great to warrant a finding of a causal connection. *Accord Garcia v. New Jersey State Prison*, No. 05-3159, 2007 WL 2669332, at *2 (D.N.J. Sept. 6, 2007) (finding seven months too great a delay between events to support an inference of causality). However, this lack of temporal proximity is not necessarily dispositive. *See Marra*, 497 F.3d at 302; *see also Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) ("[W]here 'the temporal proximity is not so close

as to be unduly suggestive,' we have recognized that "timing plus other evidence may be an appropriate test. . . .'") (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 513 (3d Cir. 2003)).

Plaintiff states that it was his filing an appeal in his habeas action that was the protected conduct giving rise to the retaliation.  Plaintiff filed his notice of appeal on January 21, 2010, or only a few days before he was transferred to administrative segregation.  Nevertheless, plaintiff's own allegations in his amended complaint defeat his claim that he was retaliated against for appealing the denial of his habeas petition.  Indeed, plaintiff characterizes himself as part of an uncooperative group of inmates as the prison investigated the disturbances within the prison that were placed in administrative segregation by prison staff.  (*See, e.g.*, Dkt. No. 6-1 at p. 32 (classifying himself as a member of a class of inmates who reserved his right not to inform/cooperate with prison authorities).)  Plaintiff was one of dozens of inmates who were transferred to the SHU and ultimately to MDC – Brooklyn as the prison investigated the fire alarm and contraband culprits.  Thus, based on plaintiff's own allegations in the amended complaint, he fails to state a causal connection with respect to his habeas petition and his placement in administrative segregation.  *Accord Riley v. Beard*, No. 08-1675, 2011 WL 1204264, at *17 (W.D. Pa. Mar. 29, 2011) (plaintiff failed to state retaliation claim where exhibits attached to the complaint undermine his assertion that he was placed in administrative segregation due to the filing of suits where they indicate that he was placed there due to threats to his safety); *Richardson v. United States*, No. 10-1009, 2010 WL 2571855, at *5 (M.D. Pa. June 22, 2010) ("Richardson has not alleged facts which raise a reasonable inference that his filing of grievances was a substantial or motivating factor for confiscating his shows and failing to mail them to his mother, particularly where he alleges that all inmates were subject to the search that led to the confiscation of his shoes."), *aff'd by*, 490 F. App'x 423 (3d Cir. 2012) (per curiam),

*cert. denied*, 133 S. Ct. 1498 (2013).  In this case, dozens of inmates were administratively segregated as the prison conducted its investigation.  Accordingly, for the foregoing reasons, plaintiff's retaliation claim will be dismissed without prejudice.

    C.   <u>Access to Courts Claim</u>

       Plaintiff also raises an access to courts claim.  He states that he was transferred to administrative segregation while his appeal on his habeas petition was pending with the United States Court of Appeals for the Third Circuit.  According to the complaint, administrative officials retained his property while in administrative detention, which included his legal papers. Plaintiff states that the Third Circuit denied his habeas appeal and that had he had his legal papers, he could have won this habeas appeal.

       "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).  "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit."  *Id.* (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Thus, to satisfy the requisite pleading requirements, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  *Id.* at 205-06 (footnote omitted) (citing *Christopher*, 536 U.S. at 416-17).

       In *Monroe*, the Third Circuit determined that the complaint failed to state an access to courts claim upon which relief could be granted and stated the following:

> In this case, the defendants confiscated all of the plaintiffs'
> contraband and non-contraband legal materials, including their
> legal briefs, transcripts, notes of testimony, exhibits, copies of
> reference books, treatises, journals, and personal handwritten
> notes.  In their initial pleadings, the plaintiffs' claim rested solely
> on the ground that the defendants confiscated their legal materials,
> contraband and non-contraband alike.  That claim, on its face, was
> insufficient to state a claim under *Harbury*.  So too were their
> subsequent amendments, which alleged that they lost the
> opportunity to pursue attacks of their convictions and civil rights
> claims but did not specify facts demonstrating that the claims were
> nonfrivolous.  Nor did they maintain that they had no other remedy
> to compensate them for their lost claims.  Even liberally construing
> their complaints as we must do for *pro se* litigants, they do not
> sufficiently allege that they have suffered an actual injury.

536 F.3d at 206 (internal citation and footnote omitted).  Plaintiff's complaint fails to describe

the underlying arguable claims that he was prevented from raising due to his placement in

administrative custody and the purported retention of his legal papers.  Therefore, pursuant to the

pleading standards set forth in above, plaintiff has failed to state an access to courts claim.  As it

is possible that an amendment could cure this deficiency, the dismissal of this claim will be

without prejudice.[6]

---

[6] It is worth noting that petitioner also invokes Federal Rule of Appellate Procedure 23(a) to
support this claim.  That rule states as follows:

> Pending review of a decision in a habeas corpus proceeding
> commenced before a court, justice, or judge of the United States
> for the release of a prisoner, the person having custody of the
> prisoner must not transfer custody to another unless a transfer is
> directed in accordance with this rule.  When, upon application, a
> custodian shows the need for a transfer, the court, justice, or judge
> rendering the decision under review may authorize the transfer and
> substitute the successor custodian as a party.

Fed. R. App. P. 23(a).  Plaintiff's citation to this rule notwithstanding, plaintiff's due process
rights were not violated by the transfer as the transfer implicated no protected liberty interest.
*See Hairston v. Nash*, 165 F. App'x 233, 234 (3d Cir. 2006) (per curiam) (citing *Olim v.
Wakinekona*, 461 U.S. 238, 247-48 (1983)).

D.  Class Certification

Plaintiff also requests class certification in his amended complaint.  The Court previously set forth the standard required to award class certification and rejected plaintiff's request.  (*See* Dkt. No. 2 at p. 41-44.)  Nothing in the amended complaint warrants reversing this decision. Furthermore, as stated above, plaintiff has failed to state a claim upon which relief can be granted.  Therefore, plaintiff's renewed request for class certification will be denied.

### V.    CONCLUSION

For the following reasons, plaintiff's claims relating to the conditions of confinement at MDC – Brooklyn, his retaliation and his access to courts claims will be dismissed without prejudice.  Plaintiff's remaining claims as stated in the amended complaint were previously dismissed with prejudice.  Therefore, those claims do not warrant a second dismissal as they have already been dismissed with prejudice.  Plaintiff shall have the opportunity to file a second amended complaint, but only as to the claims that have been dismissed without prejudice.  An appropriate order will be entered.

DATED:  April 11, 2014

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge