UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DEMETRIUS BROWN, : | |
| : | |
| Plaintiff, : | Civil No. 11-4421 (RBK/AMD) |
| : | |
| v. : | **OPINION** |
| : | |
| DONNA ZICKEFOOSE, Warden, : | |
| : | |
| Defendant. : | |

**KUGLER**, United State District Judge:

This *Bivens*[1] suit arises from allegations by Plaintiff Demetrius Brown ("Plaintiff"), proceeding pro se, that Donna Zickefoose, the former warden at FCI Fort Dix ("Defendant") improperly retaliated against Plaintiff by transferring him between prisons. Presently before the Court is Defendant's Motion for Summary Judgment ("Defendant's Motion") [Dkt. No. 26]. The motion is unopposed. For the following reasons, Defendant's Motion will be **GRANTED** and judgement entered in favor of Defendant.

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

On or about May 23, 1996, Plaintiff was charged with conspiracy and attempt to possess with intent distribute various amounts of powder and crack cocaine in the United States District Court for the District of Minnesota. (Second Am. Compl. ("SAC") [Dkt. No. 13] ¶ 1; Answer

---

[1] *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

[2] As this motion is unopposed, all facts contained within Defendant's Statement of Material Facts ("DSMF") [Dkt. No. 26-1] are deemed admitted for the purposes of this motion. *See* L.Civ.R. 56.1(a) ("[A]ny material fact not disputed shall be deemed undisputed for the purposes of the summary judgment motion"). Citations to the DSMF also include citations to the underlying record cites provided by Defendant.

1

[Dkt. No. 25] ¶ 1.)  On January 15, 1997, Plaintiff was found guilty, and sentenced on May 15, 1997 to a term of 360 months.  (SAC ¶¶ 2–3; Answer ¶¶ 2–3.)  On or about July 22, 2008, Plaintiff's sentence was reduced to 292 months.  (SAC ¶ 6; Answer ¶ 6.)

In December of 2008, Plaintiff filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (DSMF ¶ 5.)  This Court dismissed the petition, and Plaintiff appealed the dismissal of his petition.  (DSMF ¶¶ 6–7.)  The notice of appeal was filed on January 21, 2010, and the Third Circuit affirmed this Court's decision on August 27, 2010.  (DSMF ¶¶ 7, 9.)

In January of 2010, Defendant implemented restrictions on inmate privileges as a result of problems with contraband.  (DSMF ¶ 10.)  In response, there were a number of inmate disturbances throughout the East Compound of FCI Fort Dix and in the Satellite Camp.  (DSMF ¶ 11.)  While the disturbances were being investigated, many inmates were placed into the Special Housing Unit ("SHU") to evaluate their involvement.  (DSMF ¶¶ 12, 14.)  As a result of the large number of inmates who needed to be placed in the SHU, some inmates were temporarily relocated to other institutions due to the lack of available beds in the SHU.  (DSMF ¶ 13.)

Specifically, on January 27, 2010, forty-two Camp inmates were transferred to the SHU, and then temporarily transferred the next day to another institution to alleviate overcrowding.  (DSMF ¶¶ 15–16.)  On January 28, 2010, thirty-four inmates from the East Compound were transferred to the SHU, and were also temporarily transferred to another institution.  (DSMF ¶¶ 17–18.)  On January 29, 2010, another thirty-four inmates from the East Compound were identified as associated with disturbances or the introduction of contraband, and were transferred to the SHU.  (DSMF ¶ 19.)  Plaintiff was included in the January 29th group.  (DSMF ¶ 20.)  The

January 29th group, including plaintiff, were all transferred to another institution to alleviate overcrowding. (DSMF ¶ 21.)

On or about February 4, 2010, Plaintiff was transferred to MDC[3] Brooklyn. (DSMF ¶ 22.) Plaintiff then returned to FCI Fort Dix on or around May 12, 2010. (DSMF ¶ 23.) Plaintiff was ultimately released from custody in November 2013. (DSMF ¶ 24.)

Between the time of his transfer to MDC Brooklyn and his release from custody, Plaintiff filed ten Administrative Remedy Requests and/or appeals. (DSMF ¶ 25.) None of those grievances alleged a retaliatory transfer to MDC Brooklyn as a basis for the grievance. (DSMF ¶¶ 26–27.)

Before his release, on August 1, 2011, Plaintiff filed the first complaint in this matter. (*See* Compl [Dkt. No. 1].) By written opinion and order, this Court dismissed all of Plaintiff's claims and permitted him to file an application to re-open the case and for leave to file an amended complaint. (*See* Opinion (Nov. 26, 2012) [Dkt. No. 2]; Order (Nov. 26, 2012) [Dkt. No. 3].) Plaintiff was granted leave to file an amended complaint, which the Court ultimately dismissed, again permitting Plaintiff to file an application to re-open the case and for leave to file a second amended complaint. (*See* Opinion (Apr. 11, 2014) [Dkt. No. 8]; Order (Apr. 11, 2014) [Dkt. No. 9].)

Plaintiff then filed his application to re-open and for leave to file the SAC on May 12, 2014 following his release from custody. (*See generally* Application to Re-Open [Dkt. No. 10].) The Court, pursuant to 28 U.S.C. § 1915A screened the SAC to determine whether it should be

---

[3] Defendant refers to the facility as "FDC Brooklyn," but the federal prison facility in Brooklyn is officially known as a Metropolitan Detention Center or "MDC" rather than a Federal Detention Center or "FDC," and has been referred to consistent as MDC Brooklyn in the Court's previous opinions in this matter.

dismissed. (*See* Opinion (Apr. 14, 2015) [Dkt. No. 11] at 1–2.) The Court permitted Plaintiff's claim of retaliation to proceed, but dismissed Plaintiff's claims of denial of access to the courts and claims of conspiracy. (*See id.* at 4–9.) The claims were only permitted to proceed against Warden Zickefoose, and not against other unnamed defendants. (*See id.* at 11.) The crux of Plaintiff's retaliation allegation is that his transfer to MDC Brooklyn was in retaliation for filing an appeal of the decision denying his petition for writ of habeas corpus. (*See* SAC ¶¶ 7–8.)

On December 14, 2015, Defendant answered the SAC and also filed the instant motion. Plaintiff never responded. The motion having been briefed, it is now ripe for the Court's review. Plaintiff's claims are brought pursuant to the Supreme Court's decision in *Bivens*, and this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a).

## II.   LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex*, 477 U.S. at 322–23. A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 252. Even if the facts are undisputed, a disagreement over what inferences may be

4

drawn from the facts precludes a grant of summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). Further, the nonmoving party must come forth with affidavits and evidence in support of their position; merely relying on the pleadings and the assertions therein is insufficient to demonstrate a genuine issue of material of fact on a motion for summary judgment. *Celotex*, 477 U.S. at 324; *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citing Fed. R. Civ. P. 56(e) and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. *Anderson*, 477 U.S. at 249.

## III.  DISCUSSION

Defendant argues that judgment should be entered in favor of Defendant because (1) Plaintiff failed to exhaust his administrative remedies; (2) even if Plaintiff had exhausted, he cannot establish the transfer was retaliatory; and (3) Defendant is entitled to qualified immunity. (*See generally* Def.'s Mot. Br. [Dkt. No. 26-2].) The Court decides Defendant's Motion purely on the exhaustion issue and does not reach the other two arguments.

"There is no question that exhaustion is mandatory under the PLRA[4] and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Not only must the claim be exhausted, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

---

[4] Prison Litigation Reform Act of 1995, codified as amended at 42 U.S.C. § 1997e, et seq.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91.  Thus, the Court looks to the procedural rules of the Bureau of Prisons (the "BOP"). *See Jones*, 549 U.S. at 218 ("Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'").  The PLRA's exhaustion requirement applies to *Bivens* actions. *Nyhuis v. Reno*, 204 F.3d 65, 68 (3d Cir. 2000).

The BOP Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., provides for review of inmate grievances at the institutional, Regional, and Central Office levels.  Inmates must present grievances informally, and then if dissatisfied with the informal resolution, the inmate must submit a written Administrative Remedy Request. 28 C.F.R. §§ 542.13–542.14.  If the inmate is not satisfied with the warden's response, he may appeal to the regional director, and then to the General Counsel. *Id.* § 542.15(a).  Appeal to the General Counsel is the final administrative appeal. *Id.*

In none of Plaintiff's Administrative Remedy Requests did Plaintiff raise the issue of his transfer to MDC Brooklyn being retaliation for filing an appeal.  Rather, Plaintiff's grievances were (1) requesting removal of a Public Safety Factor; (2) requesting a copy of his Administrative Detention Order that placed him in the SHU, requesting reimbursement for lost property and loss of pay, and requesting reinstatement of his job assignment; and (3) requesting to be classified as an inmate sentenced under the Violent Crime Control Enforcement Act and not the PLRA.  (DSMF ¶ 26; Moran Decl. [Dkt. No. 26-3] ¶ 5, Ex. 2.)  Only the second grievance could be related to Plaintiff's transfer to MDC Brooklyn, but it does not allege that it

6

was done for retaliatory purposes. As such, Plaintiff has failed to properly exhaust and his claim is foreclosed. Thus, Defendant's Motion will be granted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion will be GRANTED and judgment entered in favor of Defendant. An appropriate order accompanies this opinion.

Date: August  9th , 2016

                               s/ Robert B. Kugler
                               ROBERT B. KUGLER, U.S.D.J.